IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| | § | CASE NO. 4:09CR189 |
| v. | § § | |
| JOE PAUL MANGUM | § § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter having been referred by the Honorable Richard A. Schell, the Court has considered Defendant's Motion to Suppress (Dkt. 23). After considering the evidence presented and the arguments of counsel at the April 5, 2010 hearing, the Court finds that the motion should be DENIED.

### BACKGROUND

Defendant Joe Mangum, resident of Plano, Texas, was arrested on August 4, 2009 following a search of his home. The search was made pursuant to the second of two search warrants issued for his property in the latter part of July, 2009. The first warrant was for a thermal search of Mangum's property, the execution of which returned an inconclusive result prior to the Government's application for the second warrant.

The first warrant was supported by the affidavit of Tyson Parks, a narcotics investigator with the Allen Police Department. In his affidavit, Parks recites that a confidential informant provided

information to the DEA indicating that Mangum had sold the informant marijuana and cocaine. The informant identified both Mangum and the property where Mangum had sold the marijuana and cocaine to the informant by photograph. The informant indicated that the first floor of one of the buildings on the property was used for a marijuana grow operation.

The informant also contacted Mangum on July 20, 2009 to arrange for a purchase of marijuana. In the phone call, recorded by police, Mangum indicated that the marijuana would not be ready for about a week, and discussed his method for cultivating marijuana with the informant.[1]

Parks confirmed that Mangum was the owner of record for the property in question. Parks additionally reported that a background check revealed that Mangum had a history of marijuana possession, including three convictions for drug possession.

On the basis of Parks' affidavit, a warrant for a thermal search was issued. That search was conducted on July 23, 2009 and returned "inconclusive" results.

The second warrant was supported by the affidavit of C.D. Mayfield, a narcotics corporal with the Allen Police Department. Cpl. Mayfield's affidavit recites several identical passages from Parks' affidavit, including the passages establishing the existence of the confidential informant, giving the informant's positive identification of Mangum as a source of marijuana and cocaine, revealing that the first floor of one of the buildings on Mangum's property was used for growing marijuana, and summarizing the phone conversation of July 20, 2009 between Mangum and the

---

[1] Mangum disputes the content of this call, and a recording exists and has been provided to Mangum. He contends that neither the word "marijuana" nor "pound" is used in the call, making the call summary on the warrants is incorrect, misleading, or false.

informant.

Cpl. Mayfield's affidavit also recites the results of a subpoena to Mangum's electricity service provider for the power usage records of the buildings on Mangum's property. Attached to the affidavit was a graph of the power usage of the three meters on Mangum's property, which according to Cpl. Mayfield indicated the likely existence of a marijuana grow operation in one of the structures on the property. Despite having many sections identical to the first affidavit and relating specifically to Mangum, however, Cpl. Mayfield's affidavit makes no reference to the earlier warrant or the inconclusive results obtained upon its execution.

On the basis of Cpl. Mayfield's affidavit, a warrant for search of Mangum's property was issued. Upon execution of that warrant, a marijuana grow operation was discovered in the location indicated by the confidential informant. Additional incriminating evidence was also discovered. Mangum was taken into custody and, upon questioning, made incriminating statements.

In his motion, Mangum argues that the searches were illegal and that the fruits of the searches, including his statements, should be suppressed because the warrants lacked probable cause, were supported by false, misleading misrepresentations, that the second warrant omitted information obtained in the thermal search, and that the good faith exception should not apply. Mangum argues that the warrants were supported by "bare-bones" affidavits that failed to establish probable cause because they failed to corroborate the informant's information or attest to his reliability. Second, Mangum argues that the affidavits supporting the warrants contain misrepresentations of the conversation between Mangum and the informant that are false and misleading, specifically that they

3

represent to the magistrate that certain terms such as "pound" or "marijuana" were used when, in fact, they were not. Third, Mangum argues that the omission of the results of the thermal search prevented the magistrate from having the opportunity to consider a fact tending to dissipate probable cause when making his determination of probable cause for the second warrant. Fourth, Mangum argues that the misrepresentations and omissions made by the officers in obtaining the second warrant prevent any good faith reliance by those officers on the warrant, and that the good faith exception should not apply.

## STANDARD

Probable cause is necessary to support the issuance of a valid search warrant. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Daniel,* 982 F.2d 146, 151 (5th Cir. 1993). Probable cause is determined through an examination of a totality of the circumstances. *U.S. v. Fields*, 456 F. 3d 519, 523 (5th Cir. 2006). Thus, in determining the validity of this search warrant, this Court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit..., there is a fair probability that contraband or evidence of a crime will be found at a particular place." *United States v. Froman,* 355 F.3d 882, 889 (5th Cir. 2004) (citations omitted).

When evaluating the reliability of information provided by an informant in support of a search warrant, the Court employs a four-part test. *U.S. v. Mays*, 466 F.3d 335, 343-344 (5th Cir. 2006) (citing *U.S. v. Morales*, 171 F.3d 978, 981-982 (5th Cir. 1999)). Under a totality of the

circumstances analysis, a court must consider: (1) the nature of the information provided; (2) whether the police have had the opportunity to see or hear the matter reported; (3) the veracity and basis of the informant's knowledge; and (4) whether any information provided by the informant has been independently verified by police. *Id.* Information of unknown reliability may be corroborated and shown to be reliable through independent investigation that corroborates in material respects the information given by the informant. *U.S. v. Hirschhorn*, 649 F.2d 360, 363 (5th Cir. 1981).

When a defendant challenges the validity of a warrant based on a material misrepresentation or omission in the supporting affidavit, the warrant will not be invalidated absent evidence that the material misrepresentation or omission was made intentionally or with reckless disregard for the truth. *U.S. v. McCarty*, 36 F.3d 1349, 1356 (5th Cir. 1994) (citing *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S. Ct. 2674, 2676 (1978)). If, by a preponderance of the evidence, a defendant establishes that a false or misleading statement in an affidavit supporting a warrant was made intentionally or with reckless disregard for the truth, the court must excise the offending language and determine whether the remainder of the evidence supporting the warrant establishes probable cause. *U.S. v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002). Similarly, when potentially exculpatory evidence is omitted from an affidavit supporting a search warrant, a defendant challenging the warrant must show by a preponderance of the evidence that the omission was knowingly and intentionally made or was made in reckless disregard for the truth. *U.S. v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991); *see also U.S. v. Runyan*, 290 F.3d 223, 234 n. 6 (5th Cir. 2002). Upon such a showing, the court must determine whether the inclusion of the omitted information would render

the affidavit insufficient to support a finding of probable cause. *Cronan*, 937 F.2d at 165.

ANALYSIS

In his pre-hearing briefing, Mangum argued for the suppression of evidence seized in the second search based on the informant's lack of reliability, false and misleading misrepresentations in the affidavit, omission of the results of the first search results from the second affidavit, and facial insufficiency of the warrant. At the hearing, Mangum raised an additional issue of potential police misconduct in the use of a different affiant to obtain the second warrant approximately one week after the first warrant issued. The Court will address each issue accordingly.

*1.     Informant Reliability*

First, Mangum argues that the warrants lack probable cause because the affiants fail to establish the past reliability of their informant. The Government concedes that it made no representations of the informant's past reliability in supplying information useful in criminal investigations. During the hearing, the Government explained that the affiants were working with the informant for the first time, and thus had no past history with the informant to establish reliability. Instead, the Government argues, the affiants corroborated the informant's information as much as possible through independent investigation. For example, the affiants produced photographs of Mangum and his property which were correctly identified by the informant, and the affiants confirmed through various government records Mangum's ownership of the property in question as well as the nature and extent of Mangum's criminal history. The affiants further corroborated their informant's information by recording a call between Mangum and the informant

wherein the informant and Mangum discussed terms for an anticipated drug transaction and methods for growing marijuana hydroponically.

The information provided by the informant was sufficiently reliable to support a determination of probable cause. Under the totality of the circumstances, the Court considers: (1) the nature of the information provided; (2) whether the police have had the opportunity to see or hear the matter reported; (3) the veracity and basis of the informant's knowledge; and (4) whether any information provided by the informant has been independently verified by police. *Mays*, 466 F.3d at 343-344. Here, the informant provided information about both past and present dealings with Mangum involving the sale of marijuana. The police had the opportunity to hear the informant plan a marijuana purchase from Mangum and did so. The informant's knowledge arose from his own dealings with Mangum, rather than the dealings of some third party. The police verified that Mangum was the individual the informant knew, confirmed that the property he owned was the property where the informant had previously purchased marijuana, confirmed that Mangum had an extensive criminal history related to the distribution of marijuana, and confirmed the existence of Mangum's ongoing plan to grow and sell marijuana. This information was provided to the magistrate without any additional claims to bolster the reliability of the informant. Based on this information, the magistrate could have assessed the credibility of any uncorroborated evidence provided by the informant when evaluating the warrant application for probable cause. This Court finds no reason to revisit the magistrate's determination on this matter.

*2.    False and Misleading Misrepresentations*

Mangum next argues that the affidavits supporting both warrants contained false and misleading misrepresentations of the content of a phone call between Mangum and an informant. The phone call is summarized in both affidavits as follows:

> On July 20, 2009 at approximately 1400 hours, Confidential Informant number 1 made a phone call to JOE PAUL MANGUM and was told that the Marihuana wouldn't be ready for at least one week. Confidential Informant number 1 asked for one pound of Marihuana and JOE PAUL MANGUM confirmed that he would have it for Confidential Informant number 1. Confidential Informant number 1 asked if it would be for $5500 and JOE PAUL MANGUM confirmed. Confidential Informant number 1 also asked if JOE PAUL MANGUM used a water solution instead of soil and JOE PAUL MANGUM confirmed that he did use a water solution and that it has taken him 15 years to get it right. JOE PAUL MANGUM then told Confidential Informant number 1 that he would be doing "it" in the next couple days and that it would be ready in the next 7-8 days. JOE PAUL MANGUM then told Confidential Informant number 1 that he would give him a couple days warning before it is ready.

Dkt. 23-2, p. 4; Dkt. 23-3, p. 7. In the phone call, the words "pound" and "Marihuana" are never used. Dkt. 23-5. Instead, Mangum appears to only refer to marijuana as "it" and uses "L B" instead of "pound." Dkt. 23-5, p. 3. The call summary appears to be a good faith effort to succinctly communicate the content of the phone call between Mangum and the informant to the magistrate.

The call summary, without more evidence, is not sufficiently misleading to undermine the warrant. To undermine a warrant, a defendant must show by a preponderance of the evidence that a false or misleading statement in an affidavit was made intentionally or with reckless disregard for the truth. *Cavazos*, 288 F.3d at 710. Mangum has offered no evidence of the conduct of the officers

8

beyond the call summary and the transcript of the call. The officer provided context for the vague antecedent "it" used in the call, and substituted "pound" for "L B." Neither of these substitutions appear to be intentionally misleading and seem to have been made in the interest of presenting a brief, truthful affidavit to the magistrate. Accordingly, Mangum has not met his burden of showing the affidavit to contain a false or misleading statement made intentionally or with reckless disregard for the truth.

## 3. *Omission of Potentially Exculpatory Evidence*

Next Mangum argues that the results from the thermal search pursuant to the first warrant were potentially exculpatory and that they were knowingly and intentionally omitted or omitted with reckless disregard for the truth when the second warrant was presented to the magistrate. To challenge the warrant, Mangum must show that the omission was intentional or made with reckless disregard for the truth by the preponderance of the evidence. *Cronan*, 937 F.2d at 165; *see also Runyan*, 290 F.3d at 234 n. 6.

Neither Mangum nor the Government produced the thermal search results to the Court, but the Government has represented to both the Court and Mangum that the thermal search results were "inconclusive" and that there was an unidentified anomaly that was not necessarily consistent with the suspected marijuana drug grow operation. Mangum argued at the hearing that this inconclusive heat anomaly should have been identified as the air compressor and/or truck present on the property where the anomaly was detected. Mangum presented no evidence that this inconclusive result was omitted from the second warrant application intentionally, leaving the Court to consider whether that

omission was made with reckless disregard for the truth with no evidence beyond the Government's admission that the search result was inconclusive. Based on the evidence presented, the Court cannot find by a preponderance of the evidence that the omission was made with reckless disregard for the truth.[2]

If the Court had found such a reckless omission, however, the warrant would still have been valid. When a defendant shows that material, potentially exculpatory, evidence was omitted from a search warrant either intentionally or recklessly, the court must determine whether the warrant with the potentially exculpatory evidence included would still support a finding of probable cause. *Cronan*, 937 F.2d at 165.

Here, the Court finds that, even if the thermal results were included in the second affidavit, there still would have been sufficient allegations to support a finding of probable cause. The thermal search allowed the Government to use a thermal imaging device to view Mangum's property from an aircraft. These thermal imaging devices detect minute differences in temperature not apparent to the naked eye. Such devices can detect the heat generated by the light sources used for indoor

---

[2]While the Court declines to make a finding of reckless disregard, the Court does not necessarily approve of the manner in which the affidavits were presented and cautions the Government that future omissions may warrant exclusion. Officers may rely on the totality of the facts when establishing probable cause, but may not disregard facts tending to dissipate probable cause. *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988). When an officer omits potentially exculpatory evidence, such as a search the officer believed would reveal criminal activity that in fact revealed none, he prevents the magistrate from weighing the totality of the circumstances when making a probable cause determination for a search warrant. When an officer feels that potentially exculpatory evidence is outweighed by evidence tending to establish probable cause, he should include the potentially exculpatory evidence and let the magistrate make the determination independently.

10

marijuana cultivation. However, the absence of evidence is not evidence of absence. The failure to detect minute temperature differences from a grow operation on the first floor through the walls and/or roof of a two-story structure on a late July day in Texas from an aircraft in flight should not be terribly surprising. Mangum's recorded conversation with the informant where he discusses price and quantity, indicates that his crop will be ready shortly, and discusses his technique for cultivating marijuana indoors establishes probable cause to search Mangum's property, even when the inconclusive thermal search is considered.

### *4.    Warrant Sufficiency*

Next, Mangum argued that the warrant was supported only by a "bare bones" affidavit that was insufficient in indicia of probable cause to support the grant of a warrant. The Court finds that the warrant had sufficient detail to support the conclusion that a search of Mangum's property had a fair probability of revealing evidence of a crime or contraband, and thus had probable cause. *See Froman,* 355 F.3d at 889. The affidavit supporting the first warrant established that Mangum grew marijuana in substantial quantity, likely grew it inside using his hydroponic system, and sold it from the property in question. Based on this alone, the police likely could have obtained a warrant to search Mangum's property. The police supplemented the evidence presented in the first affidavit with power records showing a significant increase in power consumption in one of the three buildings on Mangum's property relative to the other two during the period when he was allegedly growing his marijuana crop. This additional information corroborated the informant's statement that Mangum grew marijuana inside one of the structures and would support a common-sense decision

11

that a search of the structures on Mangum's property had a fair probability of uncovering an indoor marijuana grow operation.

5. ***Officer Misconduct***

At the hearing, Mangum also challenged the warrants on the grounds that two separate officers applied for warrants for the same property from the same magistrate. Except to the extent that this may be evidence of a scheme to mislead the magistrate by concealing the relationship between the two warrants, this challenge is not relevant to the validity of the warrants. The Government responded to this challenge with a representation to the Court that a different officer was used for the second warrant due to a scheduling conflict. Even if this had been an attempt to conceal the inconclusive result of the thermal search from the magistrate, the warrant would have had support sufficient for probable cause even with the omitted search return included and the evidence obtained by the search would not be suppressed. *See Cronan*, 937 F.2d at 165.

Mangum also argued that the good faith exception should not apply in his case. The Court's finding that the warrant was valid renders this argument moot.

## RECOMMENDATION

Therefore, the Court recommends that the District Court **DENY** Defendant's Motion to Suppress (Dkt. 23).

Within fourteen days of service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 15th day of April, 2010.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE